May I please request two minutes for rebuttal? Yes, and please watch your clock. Thank you. The overarching issue in this case is whether the interwarrants period of 12 months unreasonably infringed in Mr. Barnes' possessory interest over the cell phone that was retained by the agents. This is a unique case because we have an initial warrant that was obtained the day after his arrest at the San Ysidro Port of Entry. That warrant provided for the cell phone for the cell phone extraction to take place within 90 days. The 90 days elapsed and it was on or about January the 1st of 2021 and it wasn't until January of 2022. Did Mr. Barnes ask for his cell phone back during that period of time that he was released on bail and the phone was still in the custody of the government? No, he did not make a specific request for the cell phone and that is one of the factors that the courts in analyzing in weighing the governmental interest in keeping a property vis-a-vis the possessory interest over the property by the individual. That's one of the factors that they consider, but it is not a determinative factor at all and that's why in my opening brief I spent a substantial amount of time on the cases that deal with pre-warrant seizures followed by a delay and then the obtention of a warrant. One of the factors that the courts look at is whether the defendant was out on bail which would have increased his possessory interest over the item, whether the defendant had consented to a search of the item which in this case Mr. Barnes had effectively said that he would not give consent to the search of the cell phone. Another factor is the nature of the item itself and many of those cases that I cited there note that a cell phone in particular like a laptop on the Riley, they do contain a lot of material that's intimate to a person which a person has a strong possessory interest. And lastly then the court has to consider the justification given by the government and this is where the government in this case at the district court level proffered to the court that because COVID was going on there was essentially no work done. But there were no particular or specific facts produced to the court as to how COVID at that time on October of 2020 and forward impeded the ability of the agent to conduct that cell phone extraction. And it is particularly telling that at that time the Southern District of California was conducting trials. I mean this is several months after the onset of COVID and what really speaks volumes about the case, about this particular explanation is that during trial the trial counsel asked the agent if there was something about COVID that prevented him from searching the phone and his answer was no. And that is I made reference to that in the opening brief which is and actually his specific question was COVID didn't prevent you from searching the phone on October of 2020 and his answer was correct. That's 3ER at 322. So I think you walked through the factors that we should consider in this totality of circumstances analysis. Can you speak to the issue of probable cause because even if we were to agree with you that the Fourth Amendment is implicated by the government's continued seizure of the phone after the first warrant expired, isn't the continued existence of probable cause a critical fact that we need to consider? That is a factor. I don't read your argument to be that somehow that probable cause went away or no longer existed.  Okay. No, the Fourth Amendment focuses on probable cause and also on the infringement on the possessor interest. Probable cause existed. Probable cause did not dissipate. But the probable cause doesn't, it's not something that immunizes the prolonged detention of the item. And that's one of the things that this court said in the Brewster case, which is the case involving the impounding of vehicles by Los Angeles, where this court said that the fact that there was probable cause does not take United States versus place out of the equation. So it is a factor in terms of the governmental interest on the item, but it's a factor to be considered. I'd also, in response to one of your earlier questions about whether or not Mr. Barnes had requested the item, I cited a case from this district court case from the Southern District of Iowa, where the court in that matter said, well, true, granted, the defendant did not ask for the return of the item, but many people at that stage are not aware that they have a right to request the item back. So it is due some weight, but it's not the heaviest factor. I think one of the heaviest factors is whether or not he would have been able to exercise that possessory right over him. Are you talking about the Pratt case? I'm sorry. Yes. It's the Southern District of Iowa case. In reading those cases and others that you cited, I think one distinguishing fact in many of these cases is that there was warrantless seizures. So in that case, there was a delay in obtaining the warrant in the first instance at all. They didn't have it. That's not really the facts of this case, where there was a warrant obtained immediately. It just then expired over a period of time. And during that period of time, I think you've agreed that probable cause continued to exist. There was no request for the phone. I really haven't heard from you sort of what the best arguments are for the factors that weigh in your favor for why that seizure is unlawful, given that there was a warrant obtained. Well, in those cases, and those cases carry on to this case in particular because though the initial taking was without a warrant, and these were mostly cell phones, laptops, et cetera, for which there was probable cause, a magistrate judge found probable cause. So at that point, some point after the initial warrantless seizure, and it's not that probable cause existed as of that point when the warrant was sought. Probable cause was existing from the point when the items were seized. So the existence of probable cause is something that carries on from those cases to our case, in that the court has to engage in that balancing, or the district court has to engage in that balancing exercise, which did not take place in this case. And this was a, as I said, no specific findings. And this is something that was harmless. I'm sorry, it was not harmless because the bulk of the case, the government's case, relied on those text messages. The prosecutor emphasized it at the opening statement, referring to the text messages as a, quote-unquote, treasure trove. And then at the end, in her closing remarks, again, used that same term, treasure trove. There was a co-defendant that testified in the case, but the co-defendant did not impute, was not able to testify about imputing specific knowledge about the drugs to Mr. Barnes. I apologize for interrupting, but you're talking about harmless error. I do want you to talk to me about the other evidence. I mean, there was 115 pounds of meth in the car. Mr. Maddox also testified. Mr. Barnes admitted that he rented the van. There was a deliberate ignorance instruction given, and the jury only deliberated for 40 minutes. So I don't know that I agree with you that the cell phone information, you know, wasn't harmless, given everything else that was available to the jury to make their decision. Well, let me just address a couple of things that the prosecutor said at closing. And I only – and the text messages talked about Windows today, toys tomorrow. They brought in an expert witness who identified that Windows means methamphetamine. His cut was going to be $3,000, and that get the product out of the car. And those text messages, which the prosecutor even said, you don't even have to consider the co-defendants or the other witnesses' testimony. The text messages themselves give them away. And that's why this was not harmless error. And I see that my time just expired. Okay. Thank you, counsel.  Good morning, Your Honors. May it please the Court, Andrew Chang for the United States. We did not search the phone in the time that was allowed by the search warrant. It fell through the cracks for a period of one year during some unusual circumstances. That was a mistake, and it should not have happened. But the argument that's being made here, that a delay in searching a phone, despite the presence of a lawfully valid executed search warrant, somehow arises to an illegal seizure under the Fourth Amendment, we believe that just reaches too far. The Supreme Court has never held that to be the case, nor has a single circuit court of appeals, and this court should not be the first court to do so. The core interest that is in the seizure clause of the Fourth Amendment is to protect individuals against warrantless, unreasonable seizures. Every doctrinal Supreme Court case on this topic has involved a warrantless seizure. That's Place, Jacobson, Illinois v. MacArthur, Segura, all warrantless seizure cases. All the cases cited in my friend's opening brief have involved warrantless seizures. And there's very good reason for that. Government seizure of private property without judicial authorization really is the peak concern that is at issue here in the Fourth Amendment. However, when the government has a warrant, it uses that warrant to seize property under the authority of that warrant, that interest is vindicated, because at that point, the seizure is complete. Now, the time that the government holds onto the property under that warrant, that is no longer a seizure in the ordinary sense, and it's no longer a seizure in the constitutional sense. So when a search deadline lapses in a search warrant, that may be some violation, but it's not a violation under the Fourth Amendment. Every circuit to have considered this issue, and we've cited them to the court, the 11th Circuit in Nichols, the 1st Circuit in Cyphers, the 8th Circuit in Brewer, the 10th Circuit in Burgess, all of those cases involved an expiration of an internal deadline within a search warrant. And all of those cases coalesced around the same holding, which is that unless probable cause becomes stale, the Fourth Amendment is not violated, nor does it render the search warrant invalid. And counsel, why didn't probable cause become stale in this case after the 90-day initial warrants duration period? Probable cause did not become stale because the fact that Mr. Barnes was found with 115 pounds of methamphetamine worth half a million dollars in a van that he rented, that remained true within the 90 days. And it remained true that he had a cell phone on his person and that that cell phone would have likely had evidence about his drug trafficking. All of that remained true. So that's why probable cause did not become stale. And the reason that the probable cause requirement is important is because that is an explicit requirement within the Fourth Amendment. And so if the defendant is trying to say that, as I understand him to say, that if the government allows a search deadline to lapse and that then becomes a constitutional infringement, that is atextual. It is inconsistent with the requirements that are in the Fourth Amendment itself because the Fourth Amendment only requires three things for search warrants, that it be supported by a probable cause, that it be supported by an oath or affirmation, and that it describe with particularity the place to be searched and the thing to be seized. And all of that was met in this case. So there is no mention of when the search needs to occur or that a warrant needs to contain a search deadline. So the defendant's argument is inconsistent with the text of the Constitution. It's inconsistent with every circuit to have decided this issue. And yet the government went and sought a second search warrant, correct? Okay, so I'm really struggling with this argument because I think based on what you're saying, if there's no implication of the Fourth Amendment, which I'm really struggling to wrap my head around because once the search warrant expires, the argument that Mr. Barnes no longer has a possessory interest in his property, you know, I think it's clear that he does, and I think the government obviously understood that it needed to get another search warrant before searching the phone. I'm not sure why we wouldn't just move to sort of the reasonableness of the delay versus finding that there's no Fourth Amendment right that's been implicated in the first instance. Well, it's true. The government did go ahead and get a second search warrant, but I think it did that out of an abundance of caution. I think it was the right thing to do. It was the right thing to do. But your argument is that it didn't need to do that because there need not be a specific deadline in the original search warrant. Probable cause didn't dissipate. There are all these other factors that allow the government, because it properly sought a search warrant in the first place, that that would have been permissible to search the phone after the lapse in time. I don't think legally the government needed to do it. I think it did it out of prudence. I think it was best practices. I think if the government had not gotten that second search warrant, it would have been a more difficult question under Rule 41 about whether or not the evidence should have been suppressed. But I think our position is that because the Fourth Amendment is not actually implicated and that— You don't need to win on that argument to win this case. You agree, right? Well, we think that that is the proper way for the court to decide, but if the court is leaning in a different direction, I'll pivot to that direction and say that— Yeah, maybe you should talk about the reasonableness issue, which is the thing I was asking your friend on the other side, and it's that I think based on the totality of circumstances and the fact that the government did go get a second warrant before searching the phone, maybe you can tell me what your arguments are with respect to the reasonableness. I'm happy to pivot to that, Your Honor. So if the court were to apply a totality of the circumstances reasonable test, it would come out in favor of the government. The government had a very high interest in searching that phone and in holding onto that phone. The probable cause was extremely high. As I mentioned to Judge de Alba, the defendant was found with 115 pounds of methamphetamine that was barely concealed in a van that was rented under his name. That cell phone was on his person. His co-defendant had implicated him in the post-arrest interview and also later at trial, a co-defendant had testified against him. So the government's interest in searching that phone under a second warrant was very high. The lapse of time was accidental. The government disclosed its error as soon as it found it to the district court and obtained a second warrant and timely executed that second warrant. Now if you were to balance that against the defendant's interest, possessory interest in this case, there's no dispute that the defendant never asked for his phone back. He never did. Even though he was on bond, he was not in custody, he never asked for his phone back. And as we mentioned in our brief, there was a lengthy period of time where the defendant was actually appearing on court pro se, and he was appearing on court without a lawyer and he had some sovereign citizen beliefs and he was challenging both the legitimacy of the court and the legitimacy of the government. But in all his arguments and grievances that he laid out before the court, he never asked for his phone back and he never complained about the loss of his phone. He never explained how the loss of that particular phone prejudiced him in any way. He never told the court, hey, I don't have any other phones that I can use or all of my precious memories are stored in that phone. He never made that showing to the court. And in the time I have left, if the court doesn't want to wade into the constitutional issue, there are numerous additional off-ramps that the court can use to affirm. This was a case that was at most negligence. It was not deliberate conduct. It was not recklessness. It was not gross or systemic negligence. So under the Supreme Court's case law in United States v. Herring, this is not a case where the exclusionary rule should apply. The conduct here was not culpable enough under the Supreme Court's judgment that is worth the cost of exclusion, and it's not really conduct that is susceptible to deterrence because it was accidental and it happened during a very unusual time in our history where, you know, I think we all have been through COVID. The court can also affirm, because the government's conduct here was in good faith, there was nothing that would lead the government to believe that it could not engage in that second search. All the cases that have addressed the—the surrogates that have addressed the issue have said that this is not a Fourth Amendment violation unless probable cause becomes stale. The government got that second warrant. It disclosed its error. This is not the type of good faith conduct that the exclusionary rule was meant to deter. And I'm out of time, but we also have a very strong harmless error argument as well, and we'll submit on the briefs on that. All right. Thank you, counsel. Thank you, Your Honor. Mr. Molina, I'll give you a minute, even though you ran out of time. Thank you, Your Honor. Just a couple things that I'd like to mention. In terms of the government representing that they had disclosed its error in the second warrant application, what the second warrant application said as to the error was that a previous warrant was issued, given 90 days, on October of 2020, that warrant was not executed. There were no further explanations, no further information, only that that warrant was not executed. And in terms of the factual balancing test, I think that with the assertions made by the government, this calls for a factual inquiry that should be made by the district court. So if this court feels strongly about it, then I invite the court to remand the case for factual findings at the district court level so that the court can make an assessment with the actual facts of what happened. Because at the district court level, they explained it was COVID. And then at the appellate level, it's that they simply forgot about the cell phone. So at this junction, I don't think that the government knows what happened with the cell phone. All right. Thank you, counsel. Thank you for your time. U.S. v. Barnes is submitted, and we will take up U.S. v. Tovar Duran.
judges: WARDLAW, DESAI, ALBA